**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INN WORLDWIDE, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> NEW BUFFALO VENTURES, LLC, et al., <br><br> *Defendants*. | Civil Action No. 19-511 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

  This matter comes before the Court on Plaintiff Days Inn Worldwide, Inc.'s ("DIW") unopposed motion for default judgment as to Defendants pursuant to Fed. R. Civ. P. 55(b)(2). D.E. 17. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiff's motion is **GRANTED**.

  I.  **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

  On or about June 30, 2017 DIW entered into a Franchise Agreement (the "Agreement") with Defendant New Buffalo Ventures, LLC ("NBV") for the operation of a 98-room Days Inn® guest lodging facility (the "Facility") located in New Buffalo, Michigan for a fifteen-year term.[1] Am. Compl. ¶¶ 10, 12, Ex. A.

---

[1] The Court derives the facts from Plaintiff's Amended Complaint ("Am. Compl."), D.E. 11, as well as the affidavits and exhibits submitted in conjunction with Plaintiff's motion for default judgment. *See Trs. of the Teamsters Pension Trust Fund of Phila. & Vicinity v. Riccelli Premium Produce, Inc.*, No. 10-3000, 2011 WL 1114175, at *1 (D.N.J. Mar. 23, 2011).

Among other things, the Agreement required NBV to make certain payments to DIW "for royalties, system assessments, taxes, interest, SynXis fees and other fees," which the Agreement collectively referred to as "Recurring Fees."[2]  *Id.* ¶ 13.  According to the Agreement, NBV owed interest on any past due amount at a rate of 1.5% per month or the maximum amount permitted by the applicable law, whichever was less, accruing from the due date until the amount was paid.  *Id.* ¶ 14.  NBV was also obligated to submit monthly reports to DIW regarding the monthly gross room revenue and was required to maintain accurate financial records.  *Id.* ¶¶ 15-16.  The Agreement further provided that DIW could terminate the Agreement with notice to NBV for various reasons, including the failure to (1) pay any amount due to DIW under the Agreement; (2) remedy any other default or warranties under the Agreement within 30 days of written notice; or (3) operate the facility as a "Days Inn."  *Id.* ¶ 17.  In the event of a termination, NBV agreed to pay liquidated damages in accordance with the formula specified in the Agreement.  *Id.* ¶ 18.

Defendants Alan Wazny and Nainesh Patel provided DIW with a Guaranty of NBV's obligations under the Agreement.  *Id.* ¶ 21, Ex. C.  Pursuant to the Guaranty, Wazny and Patel agreed that in the event of a default, they would "immediately make each payment and perform or cause [NBV] to perform, each unpaid or unperformed obligation of [NBV] under the [] Agreement."  *Id.* ¶ 22.

Defendants also made an "Initial Fee Note" (the "Note") on June 30, 2017, in the amount of $21,000.  Pursuant to the terms of the Note, Defendants could pay the principal sum in two installments  *Id.* ¶¶ 24-25.  If the Note was not paid within ten days after it was due, however, it was subject to "simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or

---

[2] DIW and NBV also entered into a SynXis Subscription Agreement on June 30, 2017, which "governs NBV's access to and use of certain computer programs, applications, features, and services."  *Id.* ¶ 11, Ex. B.

2

the highest rate allowed by applicable law." *Id.* ¶ 26.  Moreover, any outstanding principle was due immediately upon termination of the Agreement.  *Id.*, Ex. D.

Through a March 11, 2019 letter, DIW informed NBV, among other things, that it was in breach of the Agreement because NBV closed the facility without DIW's consent and that if the default was not cured, the Agreement could be subject to termination.  *Id.* ¶ 31.  DIW sent NBV a similar letter on April 29, 2019.  *Id.* ¶ 32.  NBV did not respond to either letter.  *Id.* ¶ 33.  By letter dated June 27, 2019, "DIW acknowledged NBV's unilateral termination" of the Agreement, because NBV had closed the facility, and advised NBV that it was required to pay DIW all outstanding recurring fees and liquidated damages.  *Id.* ¶ 34.  In addition, when the Agreement was terminated, Defendants had an outstanding principal balance for the Note in the amount of $9,000.  *Id.* ¶ 65.

On January 15, 2019, DIW filed its initial Complaint, seeking payment of certain Recurring Fees, the balance on the Note, interest, attorneys' fees, and costs of suit. D.E. 1.  On January 28, 2020, DIW filed an Amended Complaint, which includes additional allegations as to NBV's termination of the Agreement and seeks liquidated damages due to the termination.  D.E. 11.  On May 12, 2020, DIW requested that the Clerk of the Court enter default as to Defendants due to their failure to file an answer.  D.E. 16.  The Clerk subsequently entered default, and on October 19, 2020, Plaintiff filed the instant motion for default judgment.  D.E. 17.  Through the motion, Plaintiff seeks $226,075.97 in outstanding Recurring Fees, inclusive of interest; $121,101.74 in liquidated damages, inclusive of interest; and $14,212.56 for the balance due on the Note, inclusive of interest.  Fenimore Aff. ¶¶ 28, 35-39, D.E. 17-4.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims. Fed. R. Civ. P. 55. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

In entering a default judgment due to a defendant's failure to answer, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). Additionally, a court must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Id.* at *2.

## III. ANALYSIS

### A. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08–3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

### 1. Subject Matter Jurisdiction

Federal district courts have diversity jurisdiction where "the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states." 28 U.S.C. § 1332(a). DIW is a Delaware corporation with its principal place of business in Parsippany, New Jersey. Am. Compl. ¶ 1. NBV is a limited liability company. *Id.* ¶ 2. "[A] limited liability company is a citizen of all the states of its members." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018). Wazny and Patel are the only members of NBV and are domiciled in Michigan. Am. Compl. ¶¶ 3-5. NBV, therefore, is also a citizen of Michigan for the purposes of determining subject matter jurisdiction. Furthermore, DIW claims over $75,000 in damages. For purposes of determining the amount in controversy, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Raspa v. Home Depot*, 533 F. Supp. 2d 514, 517 (D.N.J. 2007) (quoting St. *Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). A plaintiff fails to meet the amount in controversy requirement only if it appears to a legal certainty, that the claim is really for less than the jurisdictional amount. *Id.* Accordingly, the Court has subject matter jurisdiction over this matter because the parties are diverse and Plaintiff sufficiently alleges in good faith that the amount in controversy exceeds $75,000.

### 2. Personal Jurisdiction

Contracting parties may waive personal jurisdiction through a forum selection clause. *Ramada Worldwide Inc.*, 2008 WL 2967067, at *10 (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315 (1963)). Here, Section 17.6.3 of the Agreement provides that NBV consents "to the non-exclusive personal jurisdiction of . . the United States District Court for the District of New Jersey for all cases and controversies under this Agreement." Am. Compl., Ex. A, § 17.6.3. Moreover, Wazny and Patel agreed to be bound by Section 17 of the Agreement in the Guaranty.

*Id.*, Ex. C.  Accordingly, the Court has personal jurisdiction over Defendants due to the Agreement and Guaranty.

### B.  Service

"In entering a default judgment, a court must [also] determine whether . . . the defendants were properly served."  *Wyndham Hotel Grp. Can., ULC v. 683079 Ontario Ltd.*, No. 17-4000, 2018 WL 2078704, at *6 (D.N.J. May 2, 2018).  Service of process is governed by Federal Rule of Civil Procedure 4.  In this instance, Wazny was personally served, and a copy of the Summons and Complaint was left with Patel's wife at his "usual place of abode."  D.E. 5.  Accordingly, Wazny and Patel were properly served under Fed. R. Civ. P. 4(e)(2).  As a limited liability company, NBV may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]"  Fed. R. Civ. P. 4(h)(1)(B).  Here, a process server personally delivered a copy of the Summons and the Complaint to Wazny, D.E. 5, an officer of NBV, Am. Compl. ¶ 4.  Therefore, NBV was properly served under Rule 4(h)(1)(B).  In sum, service of process was proper as to each Defendant.

### C.  Sufficiency of Plaintiff's Causes of Action

Next, the Court must determine whether the Amended Complaint states a proper cause of action.  In doing so, the Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages.  *Chanel, Inc.*, 558 F. Supp. 2d at 535-36.

Count One states a valid cause of action.  It requests that NBV provide an accounting of the revenue that it derived as a result of marketing, promoting, or selling guest lodging services. Am. Compl. ¶¶ 35-38.  An action requesting an accounting is sufficient where the parties had a legal obligation for the defendant to provide an account of its finances to plaintiff.  *See Boles v.*

*Vanderbilt Shirt Co.*, No. 90-0862, 1990 WL 74202, at *4 (E.D. Pa. May 31, 1990). Under Sections 3.6 and 4.8 of the Agreement, NBV was obligated to allow DIW access to its financial records if requested. Am. Compl. ¶ 16. This is a sufficient legal obligation, and Count One is sufficient.

Counts Two, Four, Six and Seven state claims for breach of contract. Under New Jersey law, to state a claim for breach of contract, a plaintiff must allege that there is (1) a valid contract; (2) plaintiff performed under the contract; (3) defendant's breach of the contract; and (4) resulting damages.[3] *Lacroce v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *12 (D.N.J. Jan. 31, 2017) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). DIW's breach of contract allegations are sufficient. In Counts Two and Four, DIW alleges that NBV breached the Agreement by failing to pay DIW liquidated damages and Recurring Fees as of the effective date of termination.[4] Am. Compl. ¶¶ 39-44, 49-52. In Count Six, DIW alleges that Wazny and Patel breached the Guaranty by failing to satisfy NBV's obligations under the Agreement. *Id.* ¶¶ 57-60. DIW pleads in Count Seven that Defendants failed to pay an outstanding balance on the Note of $9,000, which was due upon termination of the Agreement. Accordingly, Defendants breached their obligations under the Note. *Id.* ¶¶ 61-67. DIW also establishes that it performed under the contracts at issue.

---

[3] Section 17.6 of the Agreement is a choice of law clause, and provides that the Agreement is "governed by and construed under" New Jersey law. Am. Compl., Ex. A, § 17.6. As discussed, Wazny and Patel agreed to be bound by Section 17 of the Agreement in the Guaranty. *Id.*, Ex. C. The Note also has a choice of law clause, which states that it too is governed by New Jersey law. *Id.*, Ex. D.

[4] Counts Three and Five assert claims in the alternate to DIW's claims that seek liquidated damages and recurring fees as damages due to Defendants' breach of the Agreement. *See* Am. Compl. ¶¶ 45-48, 53-56. Because the Court finds that DIW states a claim for breach of the Agreement in Count Two, and that Defendants are responsible for the recurring fees and liquidated damages, it does not address these alternate claims.

### D. Damages

While the factual allegations of the complaint "will be taken as true" for a motion for default judgment, the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Further, courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment. *Paniagua Grp., Inc. v. Hospitality Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016).

#### 1. Actual Damages

As discussed, Plaintiff seeks $226,075.07 in outstanding Recurring Fees, inclusive of interest. Fenimore Aff. ¶ 28. Sections 7 and 18.4 along with Schedule C of the Agreement set forth the Recurring Fees that NBV is required to pay Plaintiff, including royalties, system assessments, taxes, and other fees. *See id.* ¶ 6; *see also* Am. Compl., Ex. A, §§ 7, 18.4, Sched. C. In addition, Section 7.3 states that DIW is entitled to recover interest on any outstanding Recurring Fees. Fenimore Aff. ¶ 7; Am. Compl., Ex. A, § 7.3. Moreover, Wazny and Patel are personally liable for the Recurring Fees through the Guaranty. *See* Am. Compl., Ex. C. Plaintiff also provided a detailed list of the outstanding Recurring Fees still owed to DIW by Defendants. *See* Fenimore Aff., Ex. J. Accordingly, DIW sufficiently establishes it is entitled to recover $226,075.07 in outstanding Recurring Fees, inclusive of interest.

DIW also seeks to recover the remaining principal balance of the Note and interest. As discussed, Plaintiff sufficiently establishes that Defendants breached the Note because they failed to pay the outstanding amount due. Moreover, pursuant to the terms of the Note, DIW is entitled to interest. Am. Compl. ¶ 26. Consequently, Plaintiff is entitled to recover $14,212.56 for the balance due on the Note, inclusive of interest. Fenimore Aff. ¶ 39.

### 2. Liquidated Damages

In addition, Plaintiff seeks liquidated damages. "Whether a liquidated damages clause is enforceable is a question of law for the court to decide." *Naporano Assocs., L.P. v. B & P Builders*, 706 A.2d 1123, 1127 (N.J. App. Div. 1998) (quoting *Wasserman's Inc. v. Township of Middletown*, 645 A.2d 100, 110 (N.J. 1994)). When a liquidated damages clause is negotiated by parties with comparable bargaining power, the ultimate issue is whether the amount of liquidated damages is reasonable, either at the time of contract formation or the breach. *Id.* But "[a] term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." *Ramada Worldwide Inc. v. Khan Hotels LLC*, No. 16-2477, 2017 WL 187384, at *6 (D.N.J. Jan. 17, 2017) (quoting Restatement (Second) of Contracts § 356(1) (1981)).

Under Section 18.3 of the Agreement, liquated damages amount to $1,000 for each guest room at the facility. Am. Compl., Ex. A, § 18.3. The Agreement permits NBV to operate a 98-room facility. *Id.*, Ex. A, Sched. B. Moreover, per Section 7.3 of the Agreement, NBV must pay interest on any outstanding amounts due to DIW. *Id.*, Ex. A, § 7.3. And again, Wazny and Patel are personally responsible for the liquidated damages through the Guaranty. *See id.*, Ex. C. Accordingly, Plaintiff seeks $98,000 in liquidated damages, plus interest. Fenimore Aff. ¶¶ 34-35. DIW's claims for liquidated damages do not require any further evidentiary proof as the amount was contractually agreed upon. *See, e.g.*, *Super 8 Motels, Inc. v. B & J (Radha), LLC*, No. 05-5713, 2006 WL 3256828, at *5 (D.N.J. Nov. 9, 2006). There is also no suggestion that the parties had unequal bargaining power. Last, the purpose of the liquidated damages clause is to compensate DIW for the loss of future recurring fees caused by a premature termination because actual damages are difficult to estimate. Fenimore Aff. ¶¶ 29-33. Therefore, the amount of liquidated damages appears reasonable given the fact that when the parties entered into the

Agreement, they expected the facility to remain open for more than ten years. The Court, therefore, will award Plaintiff $121,101.74 in liquidated damages, inclusive of interest.

### E.  Default Judgment Factors

Before entering default judgment, district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Here, all three factors weigh in favor of entering default judgment. First, considering that Defendants never responded in this matter, "Defendant[s] ha[ve] put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3. Additionally, there is nothing on the face of the Amended Complaint indicating that a meritorious defense is available. Next, without a default judgment, Plaintiff has no other means to seek relief for the harm allegedly caused by Defendants. As a result, Plaintiff will be prejudiced if default judgment is not entered. *See Int'l Union of Painters v. Andrews Window Servs. LLC*, No. 15-3583, 2016 WL 3234516, at *3 (D.N.J. June 7, 2016). Finally, Defendants' failure to answer, without providing any reasonable explanation, permits the Court to draw an inference of culpability on its part. *Id*. As a result, the Court finds that default judgment is warranted.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment (D.E. 17) is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: January 5, 2021

_____<br>
John Michael Vazquez, U.S.D.J.